IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY CRENSHAW and
HELEN L. CRENSHAW,
      Plaintiffs,

vs.                               Case No.:  3:13cv50/MCR/EMT

CITY OF DEFUNIAK SPRINGS, et al.,
      Defendants.
_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff Timothy Crenshaw and his mother, Helen Crenshaw, both of whom are proceeding pro se, commenced this action by filing a complaint under 28 U.S.C. § 1331, 42 U.S.C. §§ 1982, 1983, 1985, 1986, and 18 U.S.C. § 242 (doc. 1).  The Crenshaws name fourteen (14) Defendants:  the Northwest Florida Water Management District ("NWFWMD"); Michael A. Adkinson, Jr., Sheriff of Walton County, Florida; Vista of Ft. Walton Beach, LLC ("Vista"), a general contractor; the City of Defuniak Springs ("City"); five members of the City Council, Mac Work, Kermit Wright, Ron Kelly, Wayne Graham, and Henry D. Ennis, Sr. ("City Council Members"); Clayton Adkinson, the City Attorney; Mark Weeks, the City Marshal/Chief of Police ("Chief Weeks"); and three City police officers, Waidene Bayne, Richard Black, and Russell McNeal (*id.*).  Many Defendants filed motions to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (docs. 55, 57, 84).  Timothy Crenshaw responded in opposition to the motions and also filed a motion to amend the complaint (docs. 58, 64, 79, 91).  The court granted the motion to amend, and Plaintiffs filed an amended complaint (doc. 92).  Sheriff Adkinson, the NWFWMD, and the City Defendants renewed their motions to dismiss (docs. 96, 97, 100).  Timothy Crenshaw responded in opposition to each motion to dismiss (docs. 104, 106, 111).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions.  *See* N. D. Fla. Loc. R. 72.2(C);

*see also* 28 U.S.C. § 636(b)(1)(B)(C), Fed. R. Civ. P. 72(b). After careful consideration of the issues raised by the parties, it is the opinion of the undersigned that dismissal of this action is warranted.

## I.      ALLEGATIONS OF THE AMENDED COMPLAINT

In the Amended Complaint, which is the operative pleading, the Crenshaws allege that during an unspecified period of time prior to January of 2012, Ms. Crenshaw reported to the Sheriff's Department that she was receiving intimidating and frightening "notes" from Vista (doc. 92, Statement of Facts, ¶ A). At that time, Vista owned property due south of Ms. Crenshaw's property (*id.*). The Crenshaws allege a sheriff's deputy responded to Ms. Crenshaw's home and contacted Vista, informing Vista that Ms. Crenshaw did not want contact with the company, and advised that criminal charges would be filed if the company did not stop contacting her (*id.*). The Crenshaws allege officers from the Sheriff's Office and the City police department subsequently made daily contact with Ms. Crenshaw to check on her welfare (*id.*, ¶¶ A, B).

The Crenshaws allege Vista wished to build a development on its property, but was unsatisfied with the results of several land surveys (Statement of Facts, ¶ A). They further allege Vista wished to force Ms. Crenshaw to give up part of her property to enable Vista to build the development (*id.*). The Crenshaws allege the City, City Council Members, and City Manager were cooperating with Vista in its efforts to develop the property (*id.*). The Crenshaws allege that at some point, Vista purchased the property due north of Ms. Crenshaw's property, so the company then owned the property due north and due south of Ms. Crenshaw's property (*id.*).

The Crenshaws allege that prior to a City Council meeting on January 9, 2012, Jim Busby, a representative of Vista, informed Timothy Crenshaw and Chief Weeks that he met privately with the City Council Members, and the City Council Members decided that if Ms. Crenshaw would "give up" part of her property on the southeastern side to enable Vista to develop it, the City would not abandon a road which provided entrance to her home (Statement of Facts, ¶¶ A–C). Busby told Timothy Crenshaw that Ms. Crenshaw had one week to "do this," or the City would proceed to abandon the road (*id.*, ¶ C). The Crenshaws allege Chief Weeks advised Timothy Crenshaw to "get all of that in writing," and to advise him of Ms. Crenshaw's decision as soon as possible, so he could advise the City Council Members (*id.*, ¶ C). The Crenshaws allege that prior to this discussion, each member of the City Council, except Councilman Graham, had come to Ms. Crenshaw's home, but none of them disclosed their private discussion with Jim Busby (*id.*, ¶ B).

On or about January 12, 2012, Helen Crenshaw initiated a state court action for temporary injunctive relief against the City ("State Court Action") (Statement of Facts, ¶ D).[1] The Crenshaws allege the City mayor was served with a summons and a copy of the pleading on January 13, 2012 (*id.*).

On January 14, 2012, just prior to sunrise, Jim Busby, Officers Bayne and McNeal, and eight (8) other men arrived on Ms. Crenshaw's property (Statement of Facts, ¶ D). Jim Busby and the officers told the Crenshaws they were acting upon authority from the City, and they produced a letter signed by the Director of City Planning directing them to remove fencing and trees from Ms. Crenshaw's property (*id.*). The officers told Timothy Crenshaw that they would arrest him if he attempted to stop Busby and the eight other men from removing the fencing and trees (*id.*). The Crenshaws allege they informed Officers McNeal and Bayne, the officers' supervisor Sergeant Black, and deputies from the Sheriff's Office, that the State Court Action had been filed, and the City mayor was served with process, but the officers did not respond to this information (*id.*, ¶¶ D, E). The Crenshaws allege they were threatened and ignored because they are black, and they would not have been treated in the same manner if they were white (*id.*, ¶ D).

On January 16, 2012, Timothy Crenshaw contacted City Council Member Work and informed him of the events of January 14 (Statement of Facts, ¶ F). Council Member Work stated he did not authorize the Director of City Planning to authorize Vista to remove fencing or trees from Ms. Crenshaw's property, and he (Work) would send the City Manager to respond (*id.*). The City Manager arrived at the property and stated that neither she nor the City Council Members had authorized the Director of City Planning to issue the letter (*id.*). Timothy Crenshaw informed the City

---

[1] The court takes judicial notice of information available on the database maintained by the State of Florida Division of Administrative Hearings ("DOAH"), viewed October 25, 2013, http://www.clerkofcourts.co.walton.fl.us, regarding activity in Case No. 2012-CA-35. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries). According to the docket in Case No. 2012-CA-35, on January 12, 2012, Helen Crenshaw filed a "Motion for Temporary Injunctive Relief for Protection of Aged Elderly from Due Harm and Consideration to Appointment of Special Council" against the city of Defuniak Springs (*see* attached docket for Case No. 2012-CA-35). On January 27, 2012, the City filed a motion to dismiss or, in the alternative, motion for more definite statement (*id.*). A hearing is scheduled for October 30, 2013 (*id.*).

Manager that Jim Busby told him and Chief Weeks about the private meeting with City Council Members prior to the January 9 City Council meeting, and the City Manager denied that such an agreement had been reached between the City and Busby (*id.*).

On January 19, 2012, Chief Weeks arrived at Ms. Crenshaw's house and apologized for his officers' wrongful actions (Statement of Facts, ¶ G). Chief Weeks told the Crenshaws they could re-erect the fencing (*id.*). However, Weeks did not conduct a criminal investigation of the incident or "allow" the Crenshaws to file criminal charges (*id.*).

The Crenshaws reported the January 14 incident to Governor Rick Scott (Statement of Facts, ¶ H). The Governor's Office contacted the local prosecutor's office (*id.*). An assistant state attorney interviewed the Crenshaws and advised that he would investigate the matter (*id.*). The assistant state attorney and Chief Weeks interviewed Officers McNeal and Bayne, and the officers confirmed the events that took place on January 14 (*id.*). The assistant state attorney advised the City Attorney that he would issue an investigative subpoena to obtain documents related to the incident (*id.*). The Crenshaws allege the City Attorney failed to produce a copy of the letter from the Director of City Planning, or a copy of Ms. Crenshaw's pleading in the State Court Action, which was allegedly served upon the mayor (*id.*).

On March 21, 2012, police officers Hannah and Austin submitted an affidavit to the assistant state attorney seeking a warrant for Timothy Crenshaw's arrest, based upon Jim Busby's affidavit stating Crenshaw had trespassed on Vista's property by attempting to re-erect the fencing that had been destroyed on January 14 (Statement of Facts ¶ H). The assistant state attorney refused to issue the arrest warrant (*id.*).

On March 27, 2012, the Assistant City Manager, a City building inspector, and eight (8) City workers came to Ms. Crenshaw's property (Statement of Facts ¶ I). The City Attorney advised the Crenshaws and the others at the property, via telephone, that the circuit court judge assigned to the State Court Action verbally ordered that the City and Busby "could do anything they wanted" on Ms. Crenshaw's property, including destroying her property and causing her injury (*id.*). The Crenshaws allege that while the men were on the property, Ms. Crenshaw, who is 83 years old and walks with a cane, was knocked to the ground (*id.*). Officer McNeal told the City workers to leave Ms. Crenshaw alone, and a sheriff's deputy arrived, but no criminal battery charges were filed (*id.*).

The next morning, the assistant state attorney came to Ms. Crenshaw's home and advised the Crenshaws that they could re-erect the fencing (Statement of Facts, ¶ J). He also confirmed that the state court judge would not and did not issue the verbal order described by the City Attorney (*id.*).

With regard to the NWFWMD, the Crenshaws allege they informed the NWFWMD that on June 4, 2012, Vista submitted an application for a permit in which Vista misrepresented that it owned property that was actually owned by Ms. Crenshaw (Statement of Facts, ¶ K). The Crenshaws allege they also informed the NWFWMD of the pending State Court Action (*id.*). At a hearing held in the Florida Division of Administrative Hearings ("DOAH"), Case No. 12-3280, on January 22, 2013, testimony was presented to the Honorable D.R. Alexander showing that Vista submitted false information to the NWFWMD in support of the permit (doc. 92, Statement of Facts, ¶ K; *see also* doc. 1, Statement of Facts ¶ I). The Crenshaws allege the NWFWMD did not present documents or witnesses at the administrative hearing (doc. 92, Statement of Facts, ¶ K).[2]

The Crenshaws sue the City, City Council Members (Mac Work, Kermit Wright, Ron Kelly, Wayne Graham, and Henry D. Ennis, Sr.), City Attorney, three City police officers (Waidene Bayne, Richard Black, and Russell McNeal), the NWFMD, and Vista under 42 U.S.C. §§ 1983, 1985(3) for depriving, and conspiring to deprive, Helen Crenshaw of her property rights without due process of law as guaranteed by the Fifth and Fourteenth Amendments (doc. 92, Statement of Facts ¶¶ K, L, Statement of Claims). The Crenshaws claim additional due process violations by Chief Weeks and Sheriff Adkinson, based upon their failure to enforce Helen Crenshaw's motion for temporary injunctive relief, and failure to investigate alleged criminal activity, including violations of Florida's Sunshine Law, the destruction of and failure to disclose certain documents, and the alleged battery of Helen Crenshaw (*id.*, Statement of Facts ¶ L, Statement of Claims). The Crenshaws claim that the conduct of all Defendants was racially motivated and deprived them of equal protection under the law (*id.*, Statement of Facts ¶ L). The Crenshaws also contend Defendants' conduct violated the federal

---

[2] The court takes judicial notice of information available on the database maintained by the State of Florida Division of Administrative Hearings, viewed October 25, 2013, http://www.doah.state.fl.us, regarding activity in Case No. 12-3280. According to the docket in Case No. 12-3280, on October 9, 2012, Helen Crenshaw filed a petition for review of the NWFWMD's proposed approval of Vista's application for a permit to construct a storm water retention basin, contending the basin would cause flooding on her adjacent property (*see* attached docket for Case No. 12-3280). On March 11, 2013, Judge Alexander issued a recommended order adopting the NWFWMD's proposed action, on the ground that Vista provided reasonable assurance that construction of the basin would not cause flooding (*id.*). The DOAH order became final on April 11, 2013 (*id.*).

RICO statute, 18 U.S.C. § 1962, and they seek civil remedies pursuant to 18 U.S.C. § 1964 (*id.*, Statement of Claims).  The Crenshaws additionally claim that Defendants' conduct constituted a federal criminal offense under 18 U.S.C. § 242 (*id.*).

The Crenshaws seek punitive and exemplary damages for emotional distress, humiliation, and deprivation of civil rights (doc. 92, Relief Requested).  They also seek compensatory damages for medical expenses (*id.*).  The Crenshaws additionally seek injunctive relief in the form of an investigation into Defendants' conduct by the Federal Bureau of Investigation and the United States Attorney's Office (*id.*).

## II.     ANALYSIS

The NWFWMD seeks dismissal of the Amended Complaint, on the ground that it fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) (doc. 96).  Sheriff Adkinson seeks dismissal with prejudice of the Crenshaws' claims alleging he failed to arrest others, pursuant to Rule 12(b)(6) (doc. 97).  With regard to any other claims asserted against him, Sheriff Adkinson moves for a more definite statement, pursuant to Rule 12(b)(e) (*id.*).  The City Defendants seek dismissal of the Amended Complaint for failure to state a claim, under Rule 12(b)(6) (doc. 100).  The City contends the individual Defendants are entitled to qualified immunity from the Crenshaws' claims, because all actions were taken in the scope of their official duties, and the Crenshaws failed to demonstrate a violation of a clearly established constitutional right (*id.*).  The City Defendants contend the Crenshaws also failed to state a cause of action under the RICO Act, because they failed to allege a pattern of racketeering activity or any violation of an underlying predicate criminal act (*id.*).  The City Defendants also contend Timothy Crenshaw has no standing because he does not allege he suffered any harm as a result of the City Defendants' actions, and he does not have standing to assert claims on behalf of his mother (*id.*).  They alternatively request an order requiring the Crenshaws to amend their complaint in compliance with Rule 8, specifying the nature of each claim, to which Defendant each claim is directed, and which facts are intended to support which claims for relief (*id.*).

Dismissals for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiffs.  <u>Davis v. Monroe County Bd. of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997).  However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the

plaintiff. *See* <u>Oladeinde v. City of Birmingham</u>, 963 F.2d 1481, 1485 (11th Cir. 1992); <u>Marrero v. City of Hialeah</u>, 625 F.2d 499, 502 (5th Cir. 1980);[3] *see also* <u>Long v. Satz</u>, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); <u>Associated Builders, Inc. v. Ala. Power Co.</u>, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted); *see also* <u>Weissman v. Nat'l Ass'n of Sec. Dealers</u>, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) ("[A]ny conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal.") (citing <u>Associated Builders, Inc.</u>, 505 F.2d at 99).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). In sum, while only a short and plain statement is required, it must have more than bare assertions that "the-defendant-unlawfully-harmed-me." *Id.* (citing <u>Twombly</u>, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a).

Pro se pleadings are to be liberally construed. *See* <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). However, courts are not required to "rewrite an otherwise deficient pleading in order to sustain an action." *See* <u>GJR Inv., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998).

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

Upon review of the Amended Complaint, the court concludes the factual allegations set forth therein fail to state a claim for relief that is plausible on its face. Therefore, dismissal of this action is warranted.

A.    Plaintiff Timothy Crenshaw's Standing to Sue

The court will first address the City Defendants' argument that Timothy Crenshaw has no standing to sue, because he does not allege he suffered any harm as a result of Defendants' actions.

To establish standing, Timothy Crenshaw must satisfy three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal citations omitted).

The party invoking federal jurisdiction bears the burden of establishing these elements. *See* FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990); Warth v. Seldin, 442 U.S. 490, 508, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, that is, with the manner and degree of evidence required at the successive stages of the litigation. *See* Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883–89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 114–115 & n.31, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 45 n.25, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976). For the purpose of ruling on a motion to dismiss for want of standing, the court must accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party. Warth, 422 U.S. at 501 (citations omitted). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, because on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." Nat'l Wildlife Fed'n, 497 U.S. at 889 (citation omitted).

In the instant case, the factual allegations of the Amended Complaint do not suggest Timothy Crenshaw had any legal interest in the property at issue; nor do they suggest he suffered an invasion of any other legally protected interest as a result of Defendants' conduct. Therefore, the allegations fail to suggest he suffered an "injury in fact' to support standing to sue. *See, e.g.*, Pace v. Peters, No. 13-10124, 2013 WL 3870280 (11th Cir. July 26, 2013) (unpublished) (pro se plaintiff lacked standing to bring federal civil rights claims based upon allegations that defendants conspired to deprive him of his due process and equal protection rights by demolishing his property and obtaining a fraudulent judgment in a state property action, because plaintiff failed to allege injury in fact as the state trial court found he had no legal interest in the subject property). Accordingly, Timothy Crenshaw is not a proper party to this action.

B.     Claims Under 18 U.S.C. § 242

The Crenshaws' claims under 18 U.S.C. § 242 are frivolous, as that statute is criminal in nature and does not create a private right of action. *See* Rockefeller v. United States Court of Appeals Office, for Tenth Circuit Judges, 248 F. Supp. 2d 17 (D.D.C. 2003) (there is no private right of action under federal criminal statutes, proscribing deprivation of rights under color of law); Figueroa v. Clark, 810 F. Supp. 613 (E.D. Pa. 1992) (statutes establishing criminal liability for certain deprivations of civil rights do not give rise to civil cause of action); Powell v. Kopman, 511 F. Supp. 700 (S.D.N.Y. 1981) (section 242, which is the criminal analogue to section 1983, does not create a private right of action); Purk v. United States, 747 F. Supp. 1243 (S. D. Ohio 1989) (same). Therefore, their claims under § 242 must be dismissed.

C.     Claims under 42 U.S.C. § 1983

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa–Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). In order for a private party to be considered a state actor one of three conditions must be met:  (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private party performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private party that it was

a joint participant in the enterprise ("nexus/joint action test"). <u>Rayburn v. Hogue</u>, 241 F.3d 1341, 1347 (11th Cir. 2001) (internal quotation marks and citation omitted). To establish that a private party is a state actor under the "nexus/joint action test," the governmental body and private party "must be intertwined in a symbiotic relationship [that] involve[s] the specific conduct of which the plaintiff complains." <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1278 (11th Cir. 2003) (internal quotation marks omitted) (state action found where there was "record evidence that the state itself unmistakably directed the private actor to take particular actions.").

    1.    <u>Due Process Claims</u>

The Due Process Clause encompasses two components, a substantive component and a procedural component. The substantive component of the Due Process Clause protects only "fundamental" rights. *See* <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994) (citing <u>Palko v. Connecticut</u>, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937)). Fundamental rights "are protected against certain government actions regardless of the fairness of the procedures used to implement them." <u>McKinney</u>, 20 F.3d at 1556 (internal quotation omitted). In contrast, "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection . . . because substantive due process rights are created only by the Constitution." *Id.* (internal quotation omitted). Such state law-based rights can be rescinded "so long as the elements of procedural—not substantive—due process are observed." *Id.*

Property interests are created and defined by state law rather than the Constitution. *See* <u>Greenbriar Village, L.L.C. v. Mountain Brook City</u>, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). They are not fundamental rights, and thus are not entitled to substantive due process protection. *See id.* at 1262–63 ("[N]on-legislative deprivations of state-created rights . . . cannot support a substantive due process claim.); *see also* <u>Regents of Univ. of Mich. v. Ewing</u>, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution . . . substantive due process rights are created only by the Constitution.").

With regard to the procedural component of the Due Process Clause, "an unauthorized intentional deprivation of property by a state [actor] does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation

remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Under Florida law, a person may file a tort action in state court to recover damages for trespass and destruction of property. *See* Fla. Stat. § 768.28 (2011).

a.     City Defendants, Sheriff Adkinson, and Vista

The Amended Complaint alleges the City Council Members and Jim Busby (on behalf of Vista) decided that if Ms. Crenshaw would "give up" part of her property on the southeastern side to enable Vista to develop it, the City would not abandon a road which provided entrance to her home. The complaint does not allege Ms. Crenshaw was ever actually deprived of access to her property, or that she actually gave up any of her real property to Vista. Absent allegations showing she was actually deprived of a property interest, she cannot show she suffered a due process violation based upon the City Council Members' alleged agreement with Vista.

The Amended Complaint additionally alleges the City Planning Director and City Attorney authorized Vista to enter Ms. Crenshaw's property and destroy fencing and trees, and Officers Bayne, McNeal, and Black enforced Vista's alleged authority to do so (doc. 92, Statement of Facts, ¶¶ D, E, I). However, Ms. Crenshaw has access to an adequate post-deprivation remedy, namely, a state tort action, to recover damages for the alleged trespass onto and destruction of her property. *See* Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009) ("We have recognized that 'a civil cause of action for wrongful conversion of personal property' under state law is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state [actors].") (quoting Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991). Therefore, the Amended Complaint fails to state a due process violation against any of the City Defendants, Sheriff Adkinson, or Vista.

b.     NWFWMD

The Crenshaws also appear to assert a due process claim against the NWFWMD based upon its granting Vista's permit to construct a storm water retention basin, despite the agency's knowledge that the permit application was based upon the false representation that Vista owned the property related to the permit. In support of this claim, the Amended Complaint alleges the Crenshaws informed the NWFWMD that on June 4, 2012, Vista submitted an application for the permit in which Vista misrepresented that it owned property that was actually owned by Ms. Crenshaw. The complaint alleges the Crenshaws also informed the NWFWMD of the pending State Court Action filed by Ms. Crenshaw, seeking temporary injunctive relief. The complaint alleges a hearing on this issue

was held before an administrative law judge, wherein testimony was presented showing that Vista submitted false information to the NWFWMD.

Florida law authorizes the NWFWMD to regulate the construction of storm water management systems, including the issuance of permits to construct storm water retention reservoirs. *See* Fla. Stat. § 373.4145(1)(a), (4) (2009); Fla. Admin. Code rr. 40A-4.041, 40A-4.091 (1998). Upon receipt of a complete permit, the agency prepares a staff report and a notice of proposed agency action. *See* Fla. Admin. Code r. 40A-1.203. The notice is furnished to the permit applicant and to those persons who have filed written requests with the agency. *Id.*, r. 40A-1.203(4), (7). Substantially affected persons have the right to request an administrative hearing under Florida Statutes § 120.569 by filing a petition for administrative hearing. *Id.*, r. 40A-1.203(7).

Upon the filing of a petition or request for hearing under Florida Statutes § 120.569, the agency may request that the matter be heard by an administrative law judge. Fla. Stat. § 120.569(2)(a). If the DOAH grants the agency's request, the agency may take no further action, except as a party litigant, as long as DOAH has jurisdiction over the proceeding. *Id.* All parties are notified of a hearing date at least fourteen (14) days prior to the hearing. *Id.*, § 120.569(2)(b). The presiding officer has the power to swear witnesses and take their testimony under oath, to issue subpoenas, and to effect discovery on the written request of any party by any means available to the courts and in the manner provided in the Florida Rules of Civil Procedure, including the imposition of sanctions, except contempt. *Id.*, § 120.569(f). Any party may submit evidence. *Id.*, § 120.569(g)–(k). After the hearing, the officer issues a written order, including findings of fact, if any, and conclusions of law. *Id.*, § 120.569(l). A party who is adversely affected by the final agency action is entitled to judicial review in the appellate court where the agency maintains its headquarters or where a party resides. *See* Fla. Stat. § 120.68.

In the instant case, the allegations of the Amended Complaint show that Ms. Crenshaw received the process she was due relating to the NWFWMD's approval (or proposed approval) of Vista's permit. Therefore, the due process claim against the NWFWMD is due to be dismissed.

        c.     <u>Additional Due Process Claims Against Chief Weeks and Sheriff Adkinson</u>

The Crenshaws also claim that Chief Weeks and Sheriff Adkinson violated their due process rights by failing to enforce Ms. Crenshaw's motion for temporary injunctive relief, and failing to

investigate alleged criminal activity, including the alleged battery on Ms. Crenshaw.  Although law enforcement officers certainly have a duty to enforce <u>court orders</u>, they have no duty to enforce <u>pleadings</u> filed in a court action.  Further, with regard to the alleged failure to investigate, as private citizens, the Crenshaws "ha[ve] no judicially cognizable interest" in the criminal prosecution of another.  <u>Otero v. United States Attorney Gen.</u>, 832 F.2d 141 (11th Cir. 1987) (citing <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973)); *see also* <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989) (a private citizen has no authority to initiate a criminal prosecution); <u>Sattler v. Johnson</u>, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted).  Therefore, the allegations in the Amended Complaint fail to state a claim upon which relief may be granted as to Chief Weeks and Sheriff Adkinson.

2.  <u>Equal Protection Claims</u>

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner.  *See* <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  To state an equal protection claim based on racial discrimination, a plaintiff must allege facts showing (1) she is similarly situated with other persons who received more favorable treatment; and (2) her discriminatory treatment was based on race.  *See* <u>Jones v. Ray</u>, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks omitted).  Thus, in order to assert a plausible equal protection claim, Ms. Crenshaw must allege she was treated differently from others who were similarly situated to her.  *See* <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); <u>Hendking v. Smith</u>, 781 F.2d 850 (11th Cir. 1986).  She must also plead facts showing Defendants acted with discriminatory purpose.  *See* <u>Iqbal</u>, 556 U.S. at 676 (citations omitted); <u>E&T Realty v. Strickland</u>, 830 F.2d 1107, 1113 (11th Cir. 1987).  Under Supreme Court precedent, "purposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'" <u>Iqbal</u>, 566 U.S. at 676–77 (quoting <u>Pers. Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979)).  It instead involves a decisionmaker's undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Id.* (quoting <u>Feeney</u>).  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. <u>GJR Inv., Inc.</u>, 132 F.3d at 1367–68 (11th Cir. 1998); <u>Coon v. Ga. Pac. Corp.</u>, 829 F.2d 1563, 1569 (11th Cir. 1987).

The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). In recognizing a "class of one" claim, the Supreme Court explained in Olech that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Olech, 528 U.S. at 564 (citations and internal quotation marks omitted).

In Olech, the Supreme Court determined that the plaintiff homeowner adequately stated a "class of one" equal protection claim against the municipality based on allegations that the municipality intentionally demanded a 33-foot easement as a condition for connecting her property to the municipal water supply, while requiring only a 15-foot easement from similarly situated property owners, and that the municipality's demand was irrational and wholly arbitrary. 528 U.S. at 565. The Court relied on two of its previous decisions in formulating the "class of one" theory, Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989) and Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923).[4] Olech, 528 U.S. at 564. All three cases, Olech, Allegheny Pittsburgh, and Sioux City Bridge, concerned property assessment and taxation schemes, where there existed a single, one-dimensional standard against which departures, even for a single plaintiff, could be readily assessed. See Engquist v. Ore. Dep't of Agric., 553 U.S. 591, 602–03, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008)

---

[4] In Allegheny Pittsburgh, the Supreme Court determined that the defendant county denied the plaintiffs equal protection by setting their property tax assessment at 50% of market value based on recent purchase sale prices, but taxing other property owners at 50% of market value based on old appraisal values of their land. 488 U.S. at 338–42 (emphasis added). The Court determined, "[t]his practice resulted in gross disparities in the assessed value of generally comparable property," thereby denying the plaintiffs equal protection. Id. at 338.

In Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923), the Supreme Court recognized an equal protection claim where one taxpayer's property was assessed at 100% of its value while all others were assessed at 55%, without the government articulating any differences in the properties that would justify the disparate assessments. 260 U.S. at 445–47.

(recognizing "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments" and determining that "class of one" claims are not viable in the public employment context).

The Eleventh Circuit distinguished Olech's "one-dimensional" inquiry from a "multi-dimensional" inquiry in Griffin Indus. v. Irvin, 496 F.3d 1189 (11th Cir. 2007). In Griffin, the plaintiff owned a chicken rendering plant that was subject to stricter regulations by city and state officials than other plants, including odor regulations "more stringent than those imposed on any other chicken rendering facility in the state" and new water quality controls. 496 F.3d at 1195. The plaintiff claimed state regulators, pressured by city officials, were selectively enforcing regulations based on animosity towards the plant. Id. The plaintiff alleged that another competitor in the Georgia chicken processing business was a similarly situated comparator. Id. at 1202. The Eleventh Circuit determined that where "the government's regulatory action was undeniably multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time," the "similarly situated" comparators "'must be prima facie identical in all relevant respects.'" Id. at 1203–04 (quoting Campbell, 434 F.3d at 1314). This is a more difficult standard to meet than in cases involving "one-dimensional" decisionmaking. Id. at 1204. In "multi-dimensional" decision cases, the government's challenged decision "must be evaluated in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision." Id. at 1203; see also, e.g., Grider v. City of Auburn, Ala., 618 F.3d 1240, 1266 (11th Cir. 2010) (dismissing "class of one" claim concerning the city's establishing a lower occupancy limit for one establishment than other establishments, where the city considered several factors, such as on-site calculations by different city inspectors of standing areas in each establishment, emergency exists and fire-suppression systems, the layout of the exterior and interior of each establishment, and each establishment's square footage); Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1307 (11th Cir. 2009) (affirming dismissal of "class of one" claim concerning regulatory commission's consideration of "a variegated set of factors," including aesthetics and comparison with industry standards, to determine whether Toyota Prius qualified as a "luxury" limousine); Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (11th Cir. 2008) (plaintiff paving contractor failed to allege other contractors were similarly situated "in light of all the factors that would have been objectively reasonable" to government officials).

Here, the Amended Complaint alleges City Council Members and Vista decided that if Ms. Crenshaw would "give up" part of her property on the southeastern side to enable Vista to develop it, the City would not abandon a road which provided entrance to her home, with no rational basis for this decision.  The complaint also alleges the City Planning Director and City Attorney authorized Vista to enter Ms. Crenshaw's property and remove fencing and trees, with no rational basis for that decision either.  However, the complaint does not attempt to show, in any fashion, the existence of a property owner similarly situated to Ms. Crenshaw, who received more favorable treatment from the City Council, which is the crux of an equal protection claim.  The Crenshaws' allegation that Vista owned property adjacent to Ms. Crenshaw's is wholly insufficient to satisfy the "similarly situated" element of a "class of one" claim.  *Compare* Strickland v. Alderman, 74 F.3d 260, 264–65 (11th Cir. 1996) (plaintiff property owner failed to establish "class of one" claim regarding city's prosecuting him for violating standing water ordinance; even though other owners had standing water on their property in violation of ordinance, the water on plaintiff's property persisted months longer than standing water on other property, and plaintiff's property was the only property of which the city had received complaints concerning standing water), *and* Apothecary Dev. Corp. v. City of Marco Island, Fla., 517 F. App'x 890, 892 (11th Cir. 2013) (unpublished) (plaintiff's bald assertion that police chief harassed plaintiff and its customers, but did not harass similarly situated pharmacies and their employees and customers, was insufficient to show that other pharmacies were situated similarly to plaintiff), *and* Henry Co. Homes, Inc. v. Curb, 548 F. Supp. 2d 1281, 1291–92 (N.D. Fla. 2008) (plaintiff developer failed to show that the county singled it out from others and treated it disparately, where plaintiff submitted some evidence indicating that the county treated one other developer more favorably by informing it that building permits would not be denied despite inadequacies in improvements to the subdivision infrastructure; however, plaintiff offered little in the way of particulars about the type or extent of the infrastructure problems present in the comparator subdivision), *with* Log Creek, LLC v. Kessler, 717 F. Supp. 2d 1239, 1241–43 (N.D. Fla. 2010) (plaintiff developers adequately pleaded a "class of one" claim, sufficient to survive a motion to dismiss, where the complaint alleged (1) the county prohibited plaintiffs from using 1.2 acres consisting of depressions and a wetlands buffer zone, while four identified landowners (two defendants who owned property adjacent to plaintiff's, a third defendant who was chair of the county commission, and the defendant county itself) were allowed to use similar land and were not required

to have a buffer zone around wetlands, and there were no differences in the land or attending circumstances that would provide a rational basis for the differential treatment; (2) plaintiffs sought a zoning change that complied with all applicable requirements, was supported by the county staff, and was moving through the process without difficulty until the defendant chair of the county commission acted to block it, including by moving to revoke a prior conditional use permit; and (3) plaintiffs and two other specifically-named landowners simultaneously sought similar amendments to the county's comprehensive plan, and all the proposals garnered the required state approval and were initially supported by the county's staff, but the county approved the other landowners' applications and rejected plaintiffs' application, without a rational basis).

Likewise, with regard to the NWFWMD, the Amended Complaint alleges the agency violated its own rules by approving Vista's permit to construct a storm water retention basin, despite its knowledge that Vista did not own the property upon which the application was based. However, the Crenshaws do not allege the NWFWMD treated them differently than other citizens who objected to similar permit applications on similar grounds. Therefore, the complaint fails to state a "class of one" equal protection claim against the NWFWMD.

Similarly, the allegations of the Amended Complaint are not sufficient to state a plausible "class of one" claim against Chief Weeks, Sheriff Adkinson, and Officers Bayne, Black, and McNeal. The Amended Complaint is devoid of facts showing that other citizens were similarly situated to the Crenshaws, yet the law enforcement Defendants treated them differently. *See, e.g.*, Crystal Dunes Owners Ass'n Inc. v. City of Destin, Fla., 476 F. App'x 180, 184–85 (11th Cir. 2012) (unpublished) (plaintiffs' allegation that they, who were owners of beachfront property, were not protected by law enforcement in the same manner as all other landowners in the city, failed to satisfy similarly situated prong of "class of one" claim, because beachfront property was different from non-beachfront property under Florida law). Therefore, the equal protection claims against these Defendants should also be dismissed.

Finally, the factual allegations are insufficient to state an equal protection claim based upon racial discrimination against any Defendant. The Amended Complaint alleges Defendants deprived Ms. Crenshaw of her property "because Plaintiffs are black and white plaintiffs would not be treated like this" (doc. 92, Statement of Facts ¶ E; *see also id.*, ¶ L). This conclusory allegation is based solely upon the Crenshaws' personal belief that Defendants discriminated against them because of

their race. The complaint alleges no facts suggesting Defendants undertook their course of conduct, not for a race-neutral reason, but for the purpose of discriminating on account of their race. The Amended Complaint thus fails to state a plausible claim of racial discrimination.[5]

B.    Claim Under RICO

The Crenshaws claim that the City, City Council Members, City Attorney, and Vista acted together to forcibly defraud Ms. Crenshaw of her property by threats, intimidation and fear, to enable Vista to develop its property, in violation of 18 U.S.C. § 1962(c) (Statement of Facts, ¶¶ A, I, L; Statement of Claims).

Section 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant participated in the conduct of an enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, to establish a federal civil RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Williams v. Mohawk Indus. Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (quotation omitted). In addition, plaintiffs in a civil RICO action must also satisfy the requirements of § 1964(c), which requires (1) a showing of an injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. Id.; 18 U.S.C. § 1964(c); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). "Racketeering activity" is defined to include specified predicate acts. See 18 U.S.C. § 1961(1). In order to prove a pattern of racketeering in a civil RICO case, "a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." Am. Dental Assoc. v. Cigna Corp., 605 F.3d 1283, 1290–91 (11th Cir. 2010). The predicate acts must also be related to each other, such as having the same or similar purposes, results, participants, victims, or methods of commission. See Design Pallets, Inc. v. GrayRobinson, P.A., 515 F. Supp. 2d 1246, 1256 (M.D. Fla. 2007) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). The predicate acts must also be continuous, which can be shown by a series of related acts committed over a substantial period of time. See Design Pallets,

---

[5] The court's disposition of the Crenshaws' race-based discrimination claim obviates the need to address their conspiracy claim under 42 U.S.C. § 1985(3). See Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001) (where plaintiffs' substantive claims of racial discrimination fail on the merits, their conspiracy claim fails as well); Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 844 n.13 (11th Cir. 2000) (where plaintiff failed to present evidence indicating other similarly situated comparators were treated more favorably by defendants, and thus her claims of race and gender discrimination were subject to dismissal, the court need not address her conspiracy claims under § 1985(3)).

Inc., 515 F. Supp. 2d at 1256; *see also* Anderson v. Smithfield Foods, Inc., 209 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002) (continuity is satisfied by a closed period of repeated conduct or past conduct posing a future threat, but not by isolated events). Importantly, the Supreme Court has noted that "requiring" two acts does not mean that two acts will always constitute a "pattern." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) ("[Two] isolated acts of racketeering activity do not constitute a pattern."). "The target of [RICO] is thus not sporadic activity . . . . It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (quoting S. Rep. No. 91–617, p. 158 (1969)); *see also* Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1397 (11th Cir. 1994) (each monthly pension payment based on defendants' illegal request was a separate, related predicate act).

Additionally, a plaintiff must plead a RICO claim with the specificity required in Federal Rule of Civil Procedure 9(b), which sets forth the pleading standard for claims of fraud. Under Rule 9(b), a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled them; and (4) what Defendants gained by the alleged fraud. *See* Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997) (citation omitted). Because fair notice is the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme. *See id.*, 116 F.3d at 1381 (citing Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994)). Therefore, in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *Id.* (citations omitted).

Here, the factual allegations of the Amended Complaint fail to show predicate acts specified in § 1961(1) which amounted to or posed a threat of continued criminal activity. Therefore, the civil RICO claim is due to be dismissed.

D.     State Law Claims

To the extent the Amended Complaint asserts state law claims, those claims should be dismissed without prejudice to Plaintiffs' pursuing them in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. §

1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. <u>Baggett</u>, 117 F.3d at 1353 (citing <u>Palmer v. Hosp. Auth. of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994); <u>Exec. Software N. Am. v. United States Dist. Court</u>, 15 F.3d 1484, 1493 (9th Cir. 1994); <u>New England Co. v. Bank of Gwinnett Cnty.</u>, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); <u>Fallin v. Mindis Metals, Inc.</u>, 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in this case, the undersigned concludes that any state law claims asserted by the Crenshaws should be dismissed to permit them to pursue them in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

Accordingly, it is **ORDERED**:

1.      Defendants' motion to stay the deadlines set forth in the initial scheduling order (doc. 105) is **GRANTED**.

2.      Timothy Crenshaw's Motion for Extension of Time for Conference of Parties and Filing of Joint Report (doc. 115) is **GRANTED**. If this action is not dismissed, the court will issue an order resetting the deadlines set forth in the initial scheduling order (doc. 94).

And it is respectfully **RECOMMENDED** that:

1.      Defendants' motions to dismiss (docs. 96, 97, 100) be **GRANTED**.

2.      Plaintiff Timothy Crenshaw be **DISMISSED** as a Plaintiff for lack of standing.

3.      The federal claims asserted in the Amended Complaint be **DISMISSED with prejudice**, pursuant to Fed. R. Civ. P. 12(b)(6), because the allegations fail to state a claim upon which relief can be granted.

4.      Any state law claims be **DISMISSED without prejudice**.

5.      All pending motions be **DENIED as moot**.

6.      The clerk be directed to close the file.

At Pensacola, Florida, this <u>29th</u> day of October 2013.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).